UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHELBY SANCHEZ,

        Plaintiff,

v.                                          Case No:  6:16-cv-596-Orl-31GJK

GRUNDY PIZZA, INC., d/b/a
PAPA VITO'S ITALIAN
RESTAURANT, and
WILLIAM GRAHAM,

        Defendants.

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR DEFAULT FINAL JUDGMENT AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 22)** |
| **FILED:** | **November 22, 2016** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART**. | |

I.    **BACKGROUND.**

On April 7, 2016, Plaintiff Shelby Sanchez filed a complaint (the "Complaint") against Defendants. Doc. No. 1. On that same date, Plaintiff filed a Notice of Consent to Join of Mary Lifsey. Doc. No. 2. Sanchez, who was employed by Defendant as a server, alleges that she was not paid overtime wages for work she performed in excess of forty hours per week and that she was not paid a proper minimum wage. Doc. No. 1. As a result, the Complaint asserts claims for unpaid overtime wages and minimum wages under the Fair Labor Standards Act ("FLSA"). Id.

On June 8, 2016, returns of service were filed, in which the process server averred that she served William Graham, both individually and as the registered agent for Grundy Pizza, Inc., on April 7, 2016. Doc. Nos. 9, 10. The service was accomplished via substitute service on Graham's daughter and co-resident. Id. On June 8, 2016, Sanchez filed a Motion for Entry of Default, and the Clerk entered defaults against both Defendants on June 9, 2016.  Doc. Nos. 11-13.

On August 10, 2016, Sanchez filed a Motion for Entry of Default Final Judgment, which was denied on November 17, 2016, due to Sanchez failing to quantify her claim for minimum wage compensation. Doc. Nos. 18, 19.  On November 22, 2016, Sanchez filed a Renewed Motion for Default Final Judgment (the "Motion"), along with affidavits from herself and Lifsey, and evidence pertaining to costs. Doc. No. 22. Sanchez and Lifsey abandon their claims for minimum wage compensation. Id. at 6. In the "Wherefore" clause, Sanchez and Lifsey request a single judgment for damages and costs against "Defendant"[1] in the following amounts: 1) $39,823.20 for unpaid wages and liquidated damages; and 2) $640.00 for the filing fee and service of process. Id. at 6.[2]

## II.   STANDARD OF REVIEW.

The Federal Rules of Civil Procedure establish a two-step process for obtaining a default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). Second, after obtaining a clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the

---

[1] As the opening paragraph of the Motion asks the Court to enter "a Final Default Judgment against Defendants, GRUNDY PIZZA, INC., and WILLIAM GRAHAM," Doc. No. 22 at 1, the undersigned interprets "Defendant" in the Wherefore clause as referring to both Defendants.
[2] Plaintiff does not request an award of attorney's fees.  Doc. No. 22 at 6.

claims and parties, and that the well-pleaded factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To this end, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). To state a plausible claim for relief, plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If a plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in the motion for default judgment. With respect to a request for damages, the plaintiff bears the burden of demonstrating entitlement to the amount of damages sought in the motion for default judgment. Wallace v. The Kiwi Grp., Inc., 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. Id. (citing Miller v. Paradise of Port Richey, Inc., 75 F. Supp.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. See S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). No hearing is needed, however, "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." See id. at 1232 n.13; see also Wallace, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages"). A plaintiff may use affidavits in an effort to quantify the damages claim. Adolph Coors, 777 F.2d at 1544.

**III.   ANALYSIS.**

    **A.  Clerk's Default.**

Under the Federal Rules of Civil Procedure, a corporation may be served pursuant to: 1) the laws of the state where the district court is located or where service is made; or 2) the methods of service provided in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(h)(1). The Federal Rules of Civil Procedure and Florida law each provide that a corporation may be served by serving the corporation's registered agent. Fed. R. Civ. P. 4(h)(1)(B); Fla Stat. § 48.081(3)(a) (2016).

Here, on June 8, 2016, Graham was served individually and as Grundy Pizza's registered agent via service on Graham's daughter at Graham's place of abode. Doc. No. 9-1. Under section

48.081(3)(b), Florida Statutes, if the address for the registered agent is a residence, then service on the corporation may be made by serving the registered agent in accordance with Florida Statute section 48.031. Section 48.031(1)(a) states that service may be made by delivering a copy to the usual place of abode and leaving the papers with any person who resides there and is over fifteen years old, and informing the person of the papers' contents.

In the Affidavit of Service, the process server states that she attempted to serve the papers at 258 Ovido Court, Merritt Island, Florida, but the current resident stated that he and his mother rent the house from Graham. Doc. No. 9-1 at 1. The process server then received a new address and was able to serve "Madison Graham Daughter/Co-Resident," who is described as being fifteen years of age or older. Id. The Affidavit of Service thus demonstrates that service was proper, as it evidences that the address for the registered agent was a residence, which then permits service on a co-resident over fifteen years old under Florida Statutes sections 48.081(3)(b) and 48.031(1)(a). Service on Graham individually was proper for also complying with section 48.031(1)(a).

Defendants had twenty-one days from the date of service to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). To date, Defendants neither responded to the Complaint nor appeared in this action. Accordingly, the Clerk properly entered defaults against them. Fed. R. Civ. P. 55(a).[4]

### B. FLSA.

An employee engaged in interstate commerce must be paid an overtime wage of one and one-half times the regular rate for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). If an employee is not paid the statutory wage, the FLSA creates a private cause of action for that employee against the employer for the recovery of unpaid overtime wages and an

---

[4] The Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1337. The Court also has personal jurisdiction over Grundy Pizza, as it is incorporated and conducts business in Florida, and Graham, who is alleged to be a resident of Florida. Doc. No. 1 at ¶¶ 4, 5.

equal amount of liquidated damages if the failure to pay overtime wages is found to be willful. Id. at §§ 216(b), 260. To establish a prima facie case of liability for unpaid overtime compensation under the FLSA, the plaintiff must demonstrate the following: 1) the defendant employed her; 2) either (a) the defendant was engaged in interstate commerce, or (b) the defendant is an enterprise engaged in interstate commerce; 3) she worked over forty hours a week; and 4) the defendant did not pay her all of her overtime wages. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1277 n.68 (11th Cir. 2008).

### 1. Employment.

As defined by the statute, and subject to certain exceptions not at issue here, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statutory definition of "employer" is similarly broad as it encompasses both the employer for whom the employee directly works, as well as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" Id. at § 203(d). Given the broad definition of "employer," an employee "may file suit directly against an employer that fails to pay him the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011) (citing Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986)).

Sanchez alleges and avers that Defendants employed her as a server from approximately August 2015 to January 2016. Doc. Nos. 1 at ¶ 3; 22-1 at ¶ 4. Lifsey states in her affidavit that Defendants employed her as a server, cook, and floor manager from approximately November 1, 2010, through February 28, 2016. Doc No. 22-2 at ¶ 4. Both Sanchez and Lifsey state that on some nights they would have to "close" the restaurant. Id. at ¶ 11; Doc. No. 22-2 at ¶ 11.

Whether an individual is an "employer" under the FLSA "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir. 1973) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)). Specifically, courts assess the "economic reality of the relationship between the parties" to determine whether an individual is an "employer" under the FLSA. Rodriguez v. Jones Boat Yard, Inc., 435 F. App'x 885, 888 (11th Cir. 2011) (quoting Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997)). In conducting this analysis, the court considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id.; see Patel, 803 F.2d at 638 ("To be personally liable [for violations of the FLSA's overtime provisions], an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.").

In the Complaint, Sanchez alleges that Graham is an "employer" under the FLSA. Doc. No. 1 at ¶ 5. Specifically, she alleges that Graham "exercised the authority to: (a) hire and fire employees of GRUNDY PIZZA, INC., (b) determine the work schedules for the employees of GRUNDY PIZZA, INC., and (c) control the finances and operations of GRUNDY PIZZA, INC." Id. Accepting these allegations as true, the undersigned finds that Sanchez sufficiently demonstrated that Graham is an "employer" under the FLSA. As an "employer," Graham is jointly and severally liable for any damages that result from violations of the FLSA. See, e.g., Patel, 803 F.2d at 637-38 (finding that an individual "employer" with operational control over a covered enterprise is an employer along with the covered enterprise, and jointly and severally liable under the FLSA for unpaid wages).

Accepting these allegations and averments as true, the undersigned finds that Sanchez and Lifsey sufficiently demonstrated that they were employed by Defendants.

### 2. Coverage.

To be eligible for overtime wages under the FLSA, an employee must demonstrate that she is covered by the FLSA. Josendis, 662 F.3d at 1298. An employee may show that she is covered under the FLSA's overtime provision by demonstrating one of the following: 1) she was engaged in commerce or in the production of goods for commerce (i.e., individual coverage); or 2) the employer was engaged in commerce or in the production of goods for commerce (i.e., enterprise coverage). Id. at 1298-99; 29 U.S.C. § 207(a)(1).

Here, Sanchez maintains that Defendants were an enterprise covered by the FLSA throughout the relevant period. Doc. Nos. 1 at ¶ 10-12; 22-1 at ¶¶ 12-16. An enterprise is engaged in commerce or in the production of goods for commerce if it meets the following requirements:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1)(A)(i)-(ii). A court "cannot presume for enterprise coverage either that the employer was involved in interstate commerce or that the employer grosses over $500,000 annually." De Lotta v. Dezenzo's Italian Rest., Inc., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *2 (M.D. Fla. Nov. 24, 2009) (citing Sandoval v. Fla. Paradise Lawn Maint., Inc., 303 F. App'x 802, 805 (11th Cir. 2008)).

Sanchez alleges that Grundy Pizza "employed at least two employees who handled goods, materials and supplies which travelled in interstate commerce, such as food and food ingredients,

beverages, cash registers, phones, restaurant equipment, dining furniture, and other items used to run the business." Doc. No. 1 at ¶ 10.  Sanchez also alleges that Grundy Pizza "regularly served tourists visiting Cocoa Beach and Cape Canaveral area beaches[,] thus being directly involved in interstate commerce." Id. at ¶ 11. In her affidavit, Sanchez states that "Defendants employed two or more employees who used credit card machines and other restaurant equipment that used telephone and Internet services from out of state providers as a regular part of their job duties." Doc. No. 22-1 at ¶ 14. Sanchez further alleges that during her employment with Grundy Pizza, its annual gross revenue was in excess of $500,000.00 per annum. Doc. No. 1 at ¶ 8. Accepting these allegations and averments as true, the undersigned finds that enterprise coverage is sufficiently demonstrated.

### 3. Hours of Work per Week.

Sanchez and Lifsey allege and aver that they worked in excess of forty hours per week during their employment with Defendants. Doc. Nos. 1 at ¶¶ 21, 22; 22-1 at ¶¶ 6, 8; 22-2 at ¶¶ 6, 8. Specifically, they aver that they worked twenty hours of overtime per week. Doc. Nos. 22-1 at ¶ 8; 22-2 at ¶ 8. Accepting these allegations and averments as true, the undersigned finds that Sanchez and Lifsey sufficiently demonstrated that they worked in excess of forty hours per week while employed by Defendant.

### 4. Unpaid Overtime.

Sanchez states in her affidavit that she was not paid the overtime premium rate of time and one half for any of the hours she worked in excess of forty hours per week. Doc. No. 22-1 at ¶ 7. She states that "Defendants required me to perform work on their behalf at my regular tip credit rate of pay without additional compensation for the additional 'half-time' rate of pay for hours in excess of forty (40) per week." Id. at ¶ 6. Lifsey's affidavit contains identical statements. Doc. No.

22-2 at ¶¶ 6, 7. Accepting these averments as true, the undersigned finds that Sanchez and Lifsey sufficiently demonstrated that Defendants did not pay them overtime wages for all hours worked in excess of forty hours per week.

In light of the foregoing, it is **RECOMMENDED** that the Court find that Sanchez and Lifsey sufficiently demonstrated that Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207(a)(1).

### C. Damages.

Sanchez and Lifsey were entitled to be paid one and one-half times their regular rate of pay for all hours worked in excess of forty hours during a workweek. 29 U.S.C. § 207(a)(1). In a FLSA case, the plaintiff bears the burden of proving, "with definite and certain evidence, that he performed work for which he was not properly compensated." Reeves v. Int'l Tel. & Tel. Corp., 616 F.2d 1342, 1351 (5th Cir. 1980), implicitly overruled on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133-34 (1988). A plaintiff may establish his or her damages by affidavit. See Adolph Coors, 777 F.2d at 1544 ("Damages may be awarded only if the record adequately reflects the basis for [an] award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'") (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)). Additionally, "employees who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith." Ojeda-Sanchez v. Bland Farms, LLC, 499 F. App'x 897, 902 (11th Cir. 2012) (citing Dybach v. Fla. Dep't of Corrections, 942 F.2d 1562, 1566-67 (11th Cir. 1991)).

Sanchez avers that she worked for Defendants from approximately August 2015, through January 2016, and was paid the tipped minimum wage of $5.05 per hour plus tips. Doc. No. 22-1 at ¶¶ 4-5. Sanchez avers that she typically worked twenty hours of overtime per week. Id. at ¶ 8.

She avers that she was not paid the overtime premium rate of time and one-half for any overtime work. Id. at ¶ 7. Sanchez alleges that "Defendants required me to perform work on their behalf at my regular tip credit rate of pay without additional compensation for the additional 'half-time' rate of pay for hours in excess of forty (40) per week." Id. at ¶ 6.

In light of the foregoing, the Court finds that Sanchez's unpaid overtime wages should be calculated as follows: $8.05[5] per hour minimum wage rate x 1.5 = $12.08 minimum wage for overtime less $3.02 tip credit paid per hour = $9.06 overtime owed per hour; $9.06 x 20 overtime hours per week = $181.20 unpaid overtime per week x 18 weeks = $3,261.60. On this record, the undersigned finds that Sanchez provided sufficient evidence to support a damages award of $3,261.60 in unpaid overtime wages.

Lifsey avers that she worked for Defendants from approximately November 1, 2010, through February 28, 2016. Doc. No. 22-2 at ¶ 4. Initially, she was paid eleven dollars per hour, but she was given a raise to twelve dollars per hour the last month that she was employed. Id. at ¶ 5. Lifsey avers that she typically worked twenty hours of overtime per week. Id. at ¶ 8. Lifsey avers that she was not paid time and one-half for any overtime work. Id. at ¶ 7. In light of the foregoing, Lifsey calculates her unpaid overtime wages as follows: $11.00 per hour x .5 = $5.50 half time rate x  20 overtime hours per week = $110.20 unpaid overtime per week x 147 weeks = $16,170; plus $12.00 per hour x .5 = $6.00 overtime rate x 20 overtime hours per week = $120.00 unpaid overtime per week x 4 weeks = $480. Id. at ¶ 9. On this record, the undersigned finds that Lifsey provided sufficient evidence to support her request for $16,650 in unpaid overtime wages.

Sanchez and Lifsey also seek an award of liquidated damages. Doc. Nos. 1 at 5; 22 at 6.

---

[5] Although Sanchez was paid $5.05, plus a tip credit of $3.02, Doc. No. 22-1 at ¶ 5, Sanchez uses the standard minimum wage of $8.05 in her calculations, rather than $8.07. The undersigned uses the lower rate Sanchez requested in these calculations.

Sanchez alleges that Defendants willfully refused to pay her overtime wages. Doc. No. 1 at ¶ 30. Defendants have not presented any evidence of a good faith failure to pay overtime wages. Therefore, by virtue of Defendants' default, Defendants admit that they willfully violated the FLSA. Ojeda-Sanchez, 499 F. App'x at 902. As a result, the undersigned finds that Plaintiffs are entitled to an award of liquidated damages. Accordingly, it is **RECOMMENDED** that the Court award Sanchez $3,261.60, and Lifsey $16,650.00 in unpaid overtime wages, plus an equal amount of liquidated damages.[6]

### D. Costs.

Sanchez and Lifsey request an award of $640.00 in costs, which represents $400.00 for the filing fee and $240.00 for service of process. Doc. Nos. 22 at 6; 22-3 at ¶ 2. The FLSA mandates that in any action brought by an employee to enforce Sections 206 or 207 of the Act, the Court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow . . . costs of the action." 29 U.S.C. § 216(b). In FLSA cases, courts may tax those costs permitted by 28 U.S.C. § 1920. See Glenn v. General Motors Corp., 841 F.2d 1567, 1575 (11th Cir. 1988) (finding that "nothing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A § 1920."). A court, though, may not tax costs "in excess of those permitted by Congress under 28 U.S.C. § 1920." Maris Distrib. Co. v. Anheuser-Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002). The filing fee and fees for service of process are recoverable and reasonable.[7] 28 U.S.C. § 1920(1). Accordingly, it is **RECOMMENDED** that the Court award $640.00 in costs.

---

[6] Because the undersigned recommends finding that the violations were willful, the applicable statute of limitations is three years. 29 U.S.C. § 255(a). Sanchez and Lifsey's claims are within the statute of limitations, as Sanchez is only seeking damages from August 2015, and Lifsey is only seeking damages for 151 weeks of her time working under Defendants from November 1, 2010, through February 28, 2016. Doc. Nos. 22-1 at ¶4, 22-2 at ¶ 9.

[7] Although there is no explanation provided as to why $240 in costs for service of process is reasonable, the reasonableness of this cost is nonetheless determinable based on a review of the record. In particular, the record reveals that service of process upon Defendants resulted from multiple attempts at multiple locations. See Doc. Nos. 9, 10.

### E. Judgment

In the Motion, Sanchez and Lifsey request a judgment in an amount equal to their damages added together, plus costs. Doc. No. 22 at 6. Sanchez and Lifsey have individual, distinct claims for damages, as evidenced by their different dates and durations of employment and different rates of pay. Doc. Nos. 22-1, 22-2. There is no indication of who paid the costs in this case. No authority is provided for combining distinct damages suffered by individual plaintiffs into a single judgment for the total amount owed by defendants. The undersigned therefore recommends that separate judgments be entered—one for Sanchez and one for Lifsey—according to their individual damages, and that a separate costs judgment be entered in favor of both Sanchez and Lifsey.

## IV. CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 22) be **GRANTED in part and DENIED in part** as follows:

1. The Court enter a separate judgment in favor of Sanchez and against Defendants, jointly and severally, for damages in the amount of $6,523.20;

2. The Court enter a separate judgment in favor of Lifsey and against Defendants, jointly and severally, for damages in the amount of $33,300.00;

3. The Court enter a separate judgment for costs in favor of Sanchez and Lifsey and against Defendants, jointly and severally, in the amount of $640.00;

4. Otherwise, **DENY** the Motion; and

5. Direct the Clerk to close the case.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen

days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida, on February 2, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy